UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ATA JABER,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

24-CV-1250 (RA)
98-CR-464 (JFK)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Twenty-seven years ago, Petitioner Ata Jaber pled guilty to counterfeiting and was sentenced to a term of imprisonment of one year and one day. In this petition for a writ of error *coram nobis*, Dkt. 11 (the "Petition" or "Pet."), he now seeks a two-day reduction of that sentence in order to avoid its immigration consequences. *See* Pet. at 17–18.[1] The Government opposes, maintaining that the Petition is both untimely and without merit. *See* Dkt. 10 ("Opp'n"). For the reasons set forth below, the Petition is denied.

**BACKGROUND**

The following facts are drawn from the parties' submissions and, unless disputed, are assumed to be true. *See Siguencia-Romero v. Joyce*, 2025 WL 3090887, at *1 n.2 (S.D.N.Y. Nov. 5, 2025). On August 10, 1998, Petitioner pled guilty to a single count of counterfeiting, in violation of 18 U.S.C. § 473. Pet. Ex. C ("Plea Tr.") at 2, 7. During his plea allocution, Judge Keenan—to whom the criminal case was assigned—asked Petitioner whether he "possessed and sold certain counterfeit United States currency," which Petitioner acknowledged he did. Plea Tr. at 11. When

[1] Petitioner initially filed a document styled "Coram Nobis Petition to Vacate Judgment" on February 22, 2024. Dkt. 3 ("Initial Filing"). In an April 24, 2024 letter, counsel sought to refile the Petition, because "the original petition in this case was missing pages." Dkt. 9 ("Apr. 24, 2024 Letter"). After the Court granted that request, Petitioner refiled the Petition on April 26, 2024.

asked how much, Petitioner's answer was "$3,700," though he also admitted that he did it "more than once." *Id.*

In advance of and at Petitioner's initial sentencing hearing on January 20, 1999, his counsel took "strong issue" with paragraphs 13 and 14 of the presentence report, which stated that "[s]ince the defendant produced $10,000 in counterfeit U.S. currency, the offense level is increased by three levels . . . to provide for an offense level of 15." Pet. Ex. B ("PSR") ¶¶ 13–14; *see also* Pet. Ex. D-1 ("Jan. 1999 Sent'g Tr.") at 2–3; Pet. Ex. K ("Sent'g Ltr."). This three-level increase was based on Petitioner's alleged "admi[ssion] that he had made approximately 10,000 in U.S. currency with [a] color scanner" found in the trunk of his car. *Id.* ¶ 8. Petitioner disputed ever making this admission, claimed that the amount of counterfeit currency he sold totaled only $3,700, and insisted that he had no role in its manufacture. Sent'g Ltr. at 2. Petitioner's counsel further argued that "the color printer he had in the trunk of his car was used to produce fliers and other sales documents for his brother's store, and not to make counterfeit money." *Id.* at 1. Judge Keenan thus scheduled an evidentiary hearing to resolve these factual disputes and ordered the Government to produce the agent to whom Petitioner made the alleged admission. Jan. 1999 Sent'g Tr. at 12–13. At the subsequent sentencing hearing on February 24, 1999, however, Petitioner's counsel withdrew the challenges to the PSR. Pet. Ex. D-2 ("Feb. 1999 Sent'g Tr.") at 2.

At that hearing, Judge Keenan thus adopted the factual findings in the PSR and determined that the Guidelines range for the conviction was twelve to eighteen months, Pet. Ex. G ("Am. Judgment") at 6. He ultimately sentenced Petitioner to a term of imprisonment of one year and one day, consistent with the request of his counsel, who correctly believed that it would render Petitioner eligible to be released early due to "good-time," a benefit available only to those sentenced to more than a year. Feb. 1999 Sent'g Tr. at 5. This sentence was just one day above

both the bottom of the Guidelines range and the recommendation of the Probation Department. *Id*. At the urging of Petitioner's counsel, Judge Keenan also recommended his placement in a six-month "boot camp," *id.* at 6, available for minimum security risk inmates.

Unbeknownst to his attorney, Petitioner was ineligible to participate in the boot camp because of his immigration status. Pet. Ex. E ("Boot Camp For Prisoners") at 2.[2] More significantly, Petitioner's sentence to a term of imprisonment of "at least one year" for a counterfeiting offense constituted an "aggravated felony," *see* 8 U.S.C. § 1101(a)(43)(R), resulting in "a lifetime citizenship bar, a conclusive presumption of deportability, and automatic denial of discretionary relief." *See Doe v. United States*, 915 F.3d 905, 908 (2d Cir. 2019) (citing 8 U.S.C. §§ 1101(f)(8), 1227(a)(2)(A)(iii), 1228(c), 1229b(a)(3), 1229b(b)(1)(C), 1427(a)).

After learning that his immigration status made him ineligible for the boot camp, Petitioner submitted a letter *pro se* seeking a reduction of his sentence to six months of home confinement. Pet. at 12–13; Opp'n at 4. On June 24, 1999, Judge Keenan denied his request. Pet. Ex. H ("Cr. Dkt.") 18. On July 28, 1999, the Immigration and Naturalization Service ("INS") issued a notice to Petitioner, informing him that his conviction made him deportable and subject to removal. Pet. Ex. F ("Immigration Documents") at 1.

On December 20, 1999, Petitioner filed a *pro se* appeal with the Second Circuit, which was dismissed as untimely. Pet. Ex. I ("2d Cir. Order") at 1. A few months later, Petitioner again moved *pro se* for a reduced sentence. Pet. at 14; Opp'n at 4. On March 14, 2000, Judge Keenan once again denied his motion, this time stating that the Court lacked jurisdiction because "more than seven days had elapsed since he was sentenced" and the Court "can only modify [his] sentence pursuant

[2] In 1981, when he was four years old, Petitioner emigrated from Palestine to the United States with a green card. Pet. Ex. M (Jaber Decl.) ¶ 3.

to" a 28 U.S.C. § 2255 petition.[3] Pet. Ex. Q ("Mar. 14, 2000 Order") at 1. Although the docket reflects that this order was mailed to Petitioner at the facility to which he was assigned, Cr. Dkt. 21, he asserts that he never received it, *see* Jaber Decl. ¶ 9. This is likely because he was released from federal prison the day after it was docketed, Pet. Ex. J ("BOP Inmate Locator") at 1.

Immediately following his release from federal prison, Petitioner spent eighteen months in immigration custody. Jaber Decl. ¶ 10. During that detention, his then-counsel filed a third motion for a sentence reduction on February 22, 2001, asking the Court to retroactively reduce Petitioner's sentence to 365 days. Pet. Ex. P ("Feb. 22, 2001 Mot.") at 2.[4] Counsel argued that granting the reduction "might save this defendant from being deported to Palestine." *Id.* As noted in the Petition, counsel's submission contained clear deficiencies. *See* Pet. at 15–16. He referred, for instance, to a "mandatory statutory minimum [of twelve months]," Feb. 22, 2001 Mot. at 2, although no such statutorily mandated minimum applied. In any event, Judge Keenan denied the motion in March 2001, again concluding that the Court lacked jurisdiction unless Petitioner filed a § 2255 petition. Cr. Dkt. 23; Pet. Ex. S ("Gov't Ltr.").

Although he knew his attorney had submitted a motion for him, Petitioner asserts that he never saw the motion, the Government's opposition, or the Court's decision. Jaber Decl. ¶ 11. Petitioner has filed neither a § 2255 petition nor any other motion relating to his sentence since the February 2001 motion until now. "In my mind at the time," Petitioner says, "I understood that there was nothing more that could be done." *Id*. His current counsel asserts that Petitioner "had no idea that the writ existed until I told him." Dkt. 14 ("Reply") at 2.

---

[3] This order contained a typographical error, citing 18 U.S.C. § 2255 instead of 28 U.S.C. § 2255, but Petitioner does not claim this error prejudiced him in any way.

[4] Although a sentence of one year would not have altered the immigration consequences for Petitioner under 8 U.S.C. § 1101(a)(43)(R), the Government asserts that his counsel might have believed that a 365-day sentence would make Petitioner's sentence less than a year because "the year 2000 was a 366-day ('leap') year." Opp'n at 5.

According to Petitioner, the Government has not removed him despite his deportation order because he does not hold a passport and Israel has not provided him with a travel document. Pet. at 17; Jaber Decl. ¶ 5. After twenty years, ICE concluded its supervision of Petitioner, and he obtained a renewed green card. Jaber Decl. ¶ 14. Petitioner expresses concern that, because his deportation order still exists, he could be deported if he obtains a travel document, and he may not leave the United States because he may not be permitted to reenter. Pet. at 17; Jaber Decl. ¶¶ 13–14. Due to his conviction for an aggravated felony, he also may not apply for citizenship, despite his presence in the United States since 1981. Pet. at 7, 15, 17; Jaber Decl. ¶¶ 3, 13. Accordingly, Petitioner asks this Court to grant the writ and retroactively reduce his sentence to less than a year in order to avoid the immigration consequences of his previously imposed sentence. Pet. at 17–18.

## LEGAL STANDARD

"The All Writs Act permits federal courts to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *United States v. Stenger*, 2024 WL 3220260, at *2 (2d Cir. June 28, 2024) (summary order) (quoting 28 U.S.C. § 1651(a)).[5] "A writ of error *coram nobis* is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction." *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000). The writ only issues, however, when "extraordinary circumstances are present," *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992), and "only in extreme cases," *United States v. Denedo*, 556 U.S. 904, 916 (2009). It is "strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018).

[5] Unless otherwise noted, case quotations omit all citations, quotation marks, alterations, and footnotes.

To obtain *coram nobis* relief, a petitioner must demonstrate: "(1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Id.* "In reviewing a petition for the writ, a court must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner." *Mandanici*, 205 F.3d at 524; *see also United States v. Hernandez*, 283 F. Supp. 3d 144, 149 (S.D.N.Y. 2018) ("[T]he bar for succeeding on such a writ is a high one, first, because great respect is placed upon the finality of judgments, and second, because a court must presume that the proceedings were correct, and the burden of showing rests on the petitioner.").

## DISCUSSION

It is undisputed that Petitioner continues to suffer legal consequences from his sentence that may be remedied by a writ of error *coram nobis*. Petitioner argues that this Court should grant the Petition because circumstances exist compelling the writ's issuance—principally, the ineffective assistance of his two previous attorneys. *See* Pet. at 22–31. Petitioner also argues that he was denied due process because he did not receive two of the Court's decisions denying his motions for a reduction of his sentence and because the Court failed to treat his *pro se* applications liberally, deem them as § 2255 applications, or ensure these decisions were given to him. *See* Pet. at 31–32. The Government opposes, arguing that Petitioner has neither satisfied the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), nor established sound reasons to justify his decades-long delay in seeking *coram nobis* relief. Although the Court is sympathetic to Petitioner, it agrees with the Government on the law.

### I. Timeliness of the Petition

While "[n]o statute of limitations governs the filing of a *coram nobis* petition," a petitioner "must demonstrate sound reasons for any delay in seeking relief." *Kovacs v. United States*, 744

F.3d 44, 54 (2d Cir. 2014) ("The critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay."). Whether sound reasons exist "is a threshold procedural hurdle to obtaining *coram nobis* relief." *Dixon v. United States*, 2024 WL 3413735, at *2 (S.D.N.Y. July 15, 2024).

Petitioner contends that sound reasons justify his delay because he did not know there was anything more he could do to reduce his sentence, he never received Judge Keenan's decisions advising that the Court had no jurisdiction absent a § 2255 motion, and he was not aware he could seek a *coram nobis* writ until his current counsel so informed him. *See* Reply at 1–2.

Even crediting Petitioner's assertions, however, the Court finds that he has not provided reasons that justify his decades-long delay in seeking *coram nobis* relief. Approximately twenty-three years elapsed between Petitioner's receipt of notice of his deportation order and his filing of the Petition. *See* Immigration Documents at 27; *see also Hernandez*, 283 F. Supp. 3d at 153 ("[T]he appropriate time period in which to analyze a petitioner's delay in filing a *coram nobis* petition commenced with the date of the deportation order."). Such a lengthy delay may only be justified when Petitioner has moved with diligence. *See Kovacs*, 744 F.3d at 49, 54 (finding sound reasons justified lengthy delay where petitioner learned of immigration consequences ten years after entering a plea and "diligently pursued ways to reenter the country" even before he learned of possibility of filing writ two years later); *Doe*, 915 F.3d at 910 (finding petition timely where petitioner had "moved with diligence" after learning that he would not be able to obtain citizenship); *Hernandez*, 283 F. Supp. 3d at 153 (granting writ where nine-year delay was "justifiably accounted for" because petitioner had continually challenged removal proceedings for six years and had ineffective assistance of counsel during that time). When a petitioner does not act with diligence, however, his petition will not be deemed timely. *See United States v. Aguiar*,

2025 WL 262311, at *1 (2d Cir. Jan. 22, 2025) (summary order) (finding that although petitioner only recently learned that he could seek a writ, he had not exercised "due diligence in reviewing his case for errors and remedies to justify an 18-year delay").

It is undisputed that Petitioner—who was in the United States during the entire period and out of custody for the majority of it—did not pursue any avenues to challenge his sentence for the twenty-three years after his release from federal and immigration detention. He nonetheless "knew or should have known" the bases for his claims no later than 2001—by which time he had learned he would not be enrolled in the boot camp because of his immigrant status, had received his notice of deportation, and his February 2001 motion for a sentence reduction had been denied. *See Nangia v. United States*, 2018 WL 8737886, at *4 (S.D.N.Y. Mar. 5, 2018) ("In deciding the timeliness of *coram nobis*, the critical inquiry is whether the petitioner knew or should have known earlier of facts underlying the claim for *coram nobis* relief."); *see also Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (denying petition for *coram nobis* relief as untimely where petitioner "knew or should have known since the time of his conviction in 1990 of the facts underlying his current claim"); *cf. Rashid v. Mukasey*, 533 F.3d 127, 132 n.3 (2d Cir. 2008) ("[W]e have . . . recognized . . . that even an alien who is unfamiliar with the technicalities of immigration law can, under certain circumstances, be expected to comprehend that he has received ineffective assistance" once he was "aware that there was an order of removal against [him]."). While Petitioner asserts that he never saw Judge Keenan's decisions denying his applications for a sentence reduction, he does not contest that the Court mailed its first decision to him and that his counsel received the Court's second decision. Nor does he contend, notably, that he made any effort to even seek a copy of

these publicly available decisions—which may well have led him to file a § 2255 petition, or seek legal advice about the appropriate avenue for relief following his release.[6]

The totality of these circumstances thus militates against a finding that sound reasons justify Petitioner's delay of more than two decades in seeking *coram nobis* relief. Numerous decisions from this District have held as much. *See Rodriguez v. United States*, 2025 WL 691580, at *3 (S.D.N.Y. Mar. 4, 2025) ("While Petitioner cites a medical condition and his post-sentencing deportation as reasons for his untimely claim, he does not explain how these experiences give rise to a delay of 22 years. This unexplained delay of two decades disqualifies him from coram nobis relief."); *Dixon*, 2024 WL 3413735, at *2 (finding petition untimely where movant "allege[d] no facts demonstrating why he could not have sought relief sooner or that he exercised due diligence in pursuing his claims"); *Korac v. United States*, 2011 WL 2365811, at *4 (S.D.N.Y. June 6, 2011) ("[W]here a petitioner has learned that a conviction carries possible immigration consequences and nevertheless waits to seek *coram nobis* relief for a period of several years, or until he has exhausted other means of attacking the conviction, no sound reason exists."); *Shen v. United States*, 2024 WL 1803916, at *10 (S.D.N.Y. Apr. 25, 2024) ("Ms. Shen was aware in 2006 that her conviction would have adverse immigration effects that could include deportation. . . . A 16-year gap without a competent explanation is simply too long.").

Indeed, courts regularly deny *coram nobis* petitions as untimely on the basis of much shorter delays. *See, e.g.*, *Chhabra v. United States*, 720 F.3d 395, 405, 410–11 (2d Cir. 2013) (affirming denial of petition as untimely where six years had elapsed between when petitioner learned of immigration consequences and filing of petition); *Foont*, 93 F.3d at 78, 80 (affirming denial of petition where petitioner did not demonstrate sound reasons for five-year delay); *Nordahl*

---

[6] Petitioner was released from federal custody on March 16, 2000, one day after Judge Keenan's second order was docketed. BOP Inmate Locator at 1.

*v. United States*, 425 F. App'x 35, 36 (2d Cir. 2011) (summary order) (affirming denial of petition where *pro se* petitioner had "neglect[ed] to consult with his attorney or inquire into the status of his appeal for a period of over four years, and . . . wait[ed] another 3.5 years before filing his coram nobis petition").

Although the Court recognizes the dire immigration consequences Mr. Jaber faces, on this record, it finds that he has not provided sufficient justification for his lengthy delay in seeking *coram nobis* relief. And as the Second Circuit noted in *Foont*, "to entertain [the] petition notwithstanding his unjustifiable delay would be an unwarranted infringement upon the government's interest in the finality of convictions." 93 F.3d at 80.

## II. Ineffective Assistance of Counsel

Even if Petitioner had justified his delay, the Petition would still fail because he has not established that he received ineffective assistance of counsel given the law in effect at the time. *See Doe*, 915 F.3d at 910 (holding that ineffective assistance of counsel is "a circumstance compelling the grant of a timely application for *coram nobis* relief"). "[W]hen a petition based on a claim of ineffective assistance fails, the writ cannot be granted." *Thomas v. United States*, 2020 WL 3428148, at *3 (S.D.N.Y. June 23, 2020).

To demonstrate ineffective assistance of counsel under *Strickland*, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that their performance was prejudicial. 466 U.S. at 692. This standard is "highly demanding and rigorous," and the claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011). Petitioner fails to satisfy both prongs.

**A. Counsel's Failure to Consider and Advise of Immigration Consequences**

Petitioner first argues that his counsel at the plea and sentencing hearings was ineffective because she failed to inform him and the Court that any sentence of one year or above would have such devastating immigration consequences. In *Padilla v. Kentucky*, the Supreme Court held that such conduct satisfies the performance prong of *Strickland*. 559 U.S. 356, 374 (2010) ("[C]ounsel must inform her client whether his plea carries a risk of deportation."). Petitioner argues that "*Padilla* . . . was violated because he was not told that a one year or more sentence would lead to the succinct and clear consequences of mandatory deportation." Pet. at 24. The Supreme Court, however, has held that *Padilla* does not provide relief retroactively, so it does not support Petitioner's claim, given that his conviction became final before that decision. *See Chaidez v. United States*, 568 U.S. 342, 358 (2013) ("[D]efendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding.").

While relying on *Padilla*, Petitioner at the same time attempts to avoid *Chaidez*'s holding regarding retroactivity by distinguishing *Padilla* on factual grounds, characterizing his claim as one "much different than a strict *Padilla* claim" because his counsel failed to "take[] minimal action to save [Petitioner's] life in the United States by obtaining a minuscule change in the sentence." Pet. at 26. But *Padilla* aside, counsel's decision not to argue for a sentence reduction was not objectively unreasonable. The immigration consequences faced by Petitioner would not have been a permissible basis for Judge Keenan to grant a downward departure from the then-mandatory twelve-to-eighteen-month Guidelines range.[7] Several years before Petitioner's

[7] Petitioner also argues that the sentence violated *United States v. Booker*, 543 U.S. 220 (2005), "because it was thought that Guidelines must be applied." Pet. at 23–24. But like *Padilla*, "*Booker* is not retroactive, *i.e.,* it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that *Booker* issued." *Guzman v. United States*, 404 F.3d 139, 144 (2d Cir. 2005).

sentencing, the Second Circuit barred such a departure in *United States v. Restrepo*, 999 F.2d 640, 644 (2d Cir. 1993).

In *Restrepo*, the Second Circuit reversed a downward departure based on anticipated negative immigration consequences, stating that "none of the bases relied on by the district court, *i.e.*, (1) the unavailability of preferred conditions of confinement, (2) the possibility of an additional period of detention pending deportation following the completion of sentence, and (3) the effect of deportation as banishment from the United States and separation from family, justified the departure." *Id*. That was the case here as well—Petitioner's ineligibility for the boot camp, the possibility of additional immigration detention, and the effect of deportation would not have justified a downward departure. Although *Restrepo* left open the possibility that "pertinent collateral consequences of a defendant's alienage" may "serve as a valid basis for departure if those consequences were extraordinary in nature or degree," *id.*, Petitioner has made no such extraordinary showing. Indeed, just months before Petitioner's sentencing, the Second Circuit reiterated that "[d]eportation alone does not constitute an extraordinary consequence that would justify a downward departure." *United States v. Tejeda*, 146 F.3d 84, 88 (2d Cir. 1998) (citing *Restrepo*, 999 F.2d at 646–47). Therefore, because Judge Keenan could not have downwardly departed based on Petitioner's potential deportation, counsel's failure to seek such a departure on that basis does not constitute unreasonable performance under *Strickland*.

Petitioner next argues that *Janvier v. United States*, 793 F.2d 449 (2d Cir. 1986), provides an alternative basis for relief under *Strickland*. Pet. at 25. Not so. In that case, the Second Circuit held that defense counsel's failure to apply for a judicial recommendation against deportation ("JRAD") could constitute ineffective assistance of counsel. But that case "dealt with a previous version of immigration law," abrogated by the time of Petitioner's sentencing, "in which the

sentencing judge could, upon defendant's motion, order that a criminal conviction not be used as the basis for deportation." *Worlumarti v. United States*, 2014 WL 2154973, at *5 n.3 (E.D.N.Y. May 22, 2014); *Padilla*, 559 U.S. at 363 ("[I]n 1990 Congress entirely eliminated [JRAD]."). Petitioner argues that, regardless of that abrogation, *Janvier* still provided a basis for an ineffective assistance of counsel claim because "it would be much easier to obtain a day off the sentence [via downward departure] than to obtain a JRAD." Pet. at 26. That argument is baseless. *Janvier* involved an interpretation of specific statutory language not available to Petitioner and made no mention of a departure. 793 F.2d at 453. In any event, because Judge Keenan could not have departed downwardly for all the reasons explained above, there was no "easier" path available to counsel to "obtain a day off the sentence." *Janvier* thus provides no basis for relief. [8]

Petitioner's claim fails under *Strickland*'s second prong as well. Under *Strickland*, Petitioner must show that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. He argues that counsel's failure to advocate for a shorter sentence was prejudicial because Judge Keenan "would not have balked at giving one day less than 12 months." Reply at 6. This claim, too, is meritless. As noted above, because the Guidelines were mandatory at the time, Judge Keenan could impose a below-Guidelines sentence only by way of a downward departure, and immigration consequences supplied no permissible basis for such a departure. Petitioner insists that the shorter sentence "was reasonably probable because [he] would have served much more time in jail had he received two days less than a year and a day," as he would not have been eligible to earn credit for

[8] In what seems to be another attempt by Petitioner to circumvent the holding that *Padilla* does not apply retroactively, he also contends that his counsel had "entered the area of immigration consequences" when "her sentencing argument focused primarily on getting [Petitioner] the boot camp," which "had an immigration element in that non-citizens would not be accepted." Pet. at 26–27. "Once she enters that area," Petitioner claims, "she needs to do so competently." *Id.* Again, however, "[p]rior to *Padilla*, counsel's failure to understand those [immigration] consequences was not a basis for ineffective assistance claims." *Worlumarti*, 2014 WL 2154973, at *5.

good behavior. Pet. at 27. But given that he has not provided any permissible legal basis on which his lawyer could have urged Judge Keenan to grant a downward departure and impose a sentence of less than one year, Petitioner fails to show prejudice.

**B. Counsel's Failure to Challenge the Offense Level**

His counsel was also ineffective, Petitioner claims, because she "failed to properly present a Guideline issue that defendant's offense did not involve more than 10,000 dollars of counterfeit currency" and "failed to negotiate for a reasonably attainable plea bargain on that issue which would have allowed defendant to get a Guidelines sentence of less than one year without a departure." Pet. at 3. This argument, too, fails to satisfy either of the *Strickland* prongs.

Counsel's decision to withdraw the initial challenge to the amount of counterfeit currency involved in Petitioner's crime and forgo an evidentiary hearing on the subject reflects a strategic choice that is presumed sound absent a "strong showing" to the contrary. *United States v. Santiago*, 330 F. App'x 234, 238–39 (2d Cir. 2009) (summary order) ("[A] defendant's counsel may properly decide to forgo a *Fatico* hearing as a matter of strategy, and we presume that such a strategy is sound absent a strong showing to the contrary."). Petitioner has made no such strong showing here. Indeed, his own declaration supports the conclusion that his counsel's decision not to litigate this issue was "a strategic decision ordinarily not second-guessed by the court." *United States v. Morel*, 2010 WL 2900318, at *4 (S.D.N.Y. July 22, 2010). Petitioner declared that "[counsel] told me that it would be better not to litigate a lot of sentencing issues," including the "amount of money that was involved in my case," because litigating those issues "might make me look bad" before Judge Keenan during sentencing. Jaber Decl. ¶ 4. "The choice not to contest certain parts of the PSR reflects a reasonable strategic decision by counsel to present only the most persuasive arguments at sentencing." *Gallagher v. United States*, 2014 WL 4725681, at *4 (D. Conn. Sept. 23, 2014).

Even assuming his counsel was ineffective for failing to pursue a challenge to the three-level enhancement, Petitioner has not established prejudice as required by *Strickland*. Nothing in the record demonstrates that there is a "reasonable probability" that Judge Keenan would have declined to apply the offense-level increase after an evidentiary hearing, *Strickland*, 466 U.S. at 694, or that the Government—which was prepared to call the agent who averred to the $10,000 statement alleged in the Complaint to testify—would have been willing to stipulate to a lower Guidelines range in a plea agreement.

**C. Counsel's Mistake Regarding Boot Camp Eligibility**

Petitioner's remaining claim concerning trial counsel's performance rests on her mistaken belief that he was eligible for the boot camp program. The mistake, though, was clearly not prejudicial. Judge Keenan made clear that the boot camp was only "a recommendation" to the Bureau of Prisons, "not the sentence." Feb. 1999 Sent'g Tr. at 9; *cf. United States v. Hay*, 2006 WL 897976, at *2 (E.D.N.Y. Mar. 31, 2006) (denying request for sentence reduction based on boot camp ineligibility). Indeed, after learning about Petitioner's ineligibility for the boot camp, Judge Keenan expressly refused to alter Petitioner's sentence, saying: "Although the Court would not have objected to Jaber being placed in 'boot camp,' home confinement is not an alternative." Cr. Dkt. 18. In light of Judge Keenan's remarks and rulings during and after sentencing, there is no "reasonable probability" that prior knowledge of Petitioner's ineligibility for the boot camp would have led him to impose a lower carceral sentence. *See Strickland*, 466 U.S. at 694.

**III. Claims Arising From Post-Conviction Proceedings**

Lastly, Petitioner maintains that his rights were violated during post-conviction proceedings. He argues that the February 2001 motion supports his ineffective assistance arguments because it contained obvious deficiencies. Pet. at 32–33. But that motion was filed as

part of a collateral proceeding, and the Supreme Court has held there is "no right to counsel" in such proceedings, subject to certain exceptions not applicable here. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). The February 2001 motion thus cannot serve as a basis for a claim of ineffective assistance of counsel. *See United States v. Sash*, 374 F. App'x 198, 199 (2d Cir. 2010) (summary order). In any event, even assuming that Petitioner had a right to effective assistance in connection with that motion, his claim would still fail because—for all the reasons stated above—he has not shown that there is a reasonable probability that a properly drafted motion would have resulted in a reduction of his sentence.

Finally, Petitioner argues that Judge Keenan should have construed his two *pro se* motions for a sentence reduction as § 2255 motions. It is true that in the Second Circuit, "[i]t is routine for courts to construe prisoner petitions without regard to labeling in determining what, if any, relief the particular petitioner is entitled to." *Chambers v. United States*, 106 F.3d 472, 475 (2d Cir. 1997). The Second Circuit held in *Adams v. United States*, however, that "district courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized." 155 F.3d 582, 584 (2d Cir. 1998). Judge Keenan was not required to *sua sponte* convert the motions into § 2255 petitions, and doing so without satisfying the requirements identified in *Adams* would itself have been impermissible.

In his order, Judge Keenan correctly stated that the Court lacked jurisdiction to modify Petitioner's sentence unless he filed a § 2255 petition. *See* Cr. Dkt. 21. Although Petitioner

represents that he never received Judge Keenan's orders, Jaber Decl. ¶¶ 6, 9, he does not claim to have made any effort to even obtain them. And, again, even if the Court had construed Petitioner's *pro se* motions as § 2255 motions, there is no reasonable probability that Judge Keenan would have granted them, for all the reasons stated above.

**CONCLUSION**

Accordingly, Mr. Jaber's Petition is denied. The Clerk of Court is respectfully directed to close this action.

SO ORDERED.

Dated: July 30, 2026
New York, New York

Ronnie Abrams
United States District Judge